NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATIONAL SPORTSWEAR, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | No. 2:14-cv-01117 (WHW) |
| | : | |
| RED DIAMOND COMPANY – ATHLETIC LETTERING, RED DIAMOND COMPANY d/b/a NATIONAL SPORTSWEAR, NATIONAL SPORTS SALES, PROMOTIONS PLUS, and NJ SPORTSWEAR, | : | |
| | : | |
| Defendant. | : | |

**Walls, Senior District Judge**

Plaintiff National Sportswear, Inc. ("Plaintiff") moves for entry of default judgment against Defendant Red Diamond Company – Athletic Lettering ("Defendant") under Federal Rule of Civil Procedure 55(b)(2). The motion has been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78(b). Plaintiff's motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a Florida corporation, is an apparel company with its principal place of business at 2217 Matthews Township Parkway, Suite D#244, Matthews, North Carolina. Compl. ¶ 1 (ECF No. 1). Defendant is a New Jersey corporation located at 368 Cortlandt Street, Belleville, New Jersey. *Id.* ¶ 2. Defendant has conducted business under several other names: National Sportswear, National Sports Sales, Promotion Plus, and NJ Sportswear. *Id.* ¶¶ 3-6.

Plaintiff has been in business using the name National Sportswear, Inc. since 2000, providing custom apparel services throughout the United States. *Id.* ¶ 10. Plaintiff registered the

**NOT FOR PUBLICATION**

trademark "National Sportswear" with the United States Patent and Trademark Office in 2006 and 2007, under registered numbers 3,073,167 (March 28, 2006) and 3,222,274 (March 27, 2007). *Id.* ¶ 11; Aff. of Duncan Benedict in Support of Entry of Default Judgment ("Benedict Aff.") ¶ 3 Ex. A (ECF No. 7-2). These trademark registrations remain valid and in effect. Compl. ¶ 12.

A majority of Plaintiff's sales originate from its website, www.nationalsportswear.com, where customers place orders for custom imprinted apparel. *Id.* ¶¶ 13-14. Plaintiff has spent significant sums promoting its business under the National Sportswear, Inc. name, and the name is prominently featured as part of its internet branding. *Id.* ¶¶ 15-16.

Defendant operates the website www.njsportswear.com. *Id.* ¶ 17. Plaintiff alleges that in 2011, it became aware that Defendant was manipulating internet searches for "National Sportswear" to direct traffic to Defendant's website. *Id.* ¶ 18. In 2011 and 2012, customer reviews critical of National Sportswear appeared on the websites for Yellow Pages and Cityscape. *Id.* ¶ 19. Plaintiff believes that customers intending to use its services were instead using Defendant's services without the customers' knowledge, and that the corresponding negative reviews were the result of Defendant's services. *Id.* ¶¶ 20-21. As example, Plaintiff states that in August 2013, its client Lithos Robotics attempted to place an order with Defendant while intending to place an order with Plaintiff. *Id.* ¶ 22. During the order process, Defendant purported to be National Sportswear. *Id.*

On June 22, 2011, Plaintiff sent Defendant a letter demanding that it cease and desist using the name National Sportswear and the website njsportswear.com. Benedict Aff. ¶ 7 Ex. B.[1] Defendant never responded to the letter. *Id.* ¶ 8.

---

[1] The complaint states that this letter was sent in October 2013, Compl. ¶ 24, but the document speaks for itself and was sent in June 2011.

**NOT FOR PUBLICATION**

Plaintiff alleges that Defendant's use of the National Sportswear name and manipulation of internet search results has caused and will continue to cause customers confusion regarding which entity they conduct business with when they attempt to do business with National Sportswear, Inc. Compl. ¶ 23. Plaintiff alleges this confusion will continue to damage its ability to interact with customers and impair its business opportunities. *Id.* Plaintiff further claims that Defendant's use of the National Sportswear name is a deliberate attempt to draw on Plaintiff's goodwill and commercial reputation. *Id.* ¶ 26. Plaintiff states that Defendant's actions are causing Plaintiff immediate and irreparable injury, as well as damage to its goodwill, reputation, and business. *Id.* ¶ 27. Plaintiff asserts that Defendant will continue to cause it damage and confuse the public unless it is enjoined. *Id.*

Plaintiff brings five causes of action: federal trademark infringement under 15 U.S.C. § 1114 (2012); federal unfair competition under 15 U.S.C. § 1125(a); common law trademark infringement; common law unfair competition; and tortious interference with prospective economic advantage. *Id.* ¶¶ 28-53. Plaintiff requests statutory damages under 15 U.S.C. § 1117(c) (2012) of no less than $1,000.00. Pl.'s Letter Br. at 3 (ECF No. 7-4). Plaintiff also seeks attorneys' fees of $2,525.00, *id.*; Cert. of Mark A. Kriegel ("Kriegel Cert.") ¶ 8 (ECF No. 7-3), and costs of $459.95, Pl.'s Letter Br. at 3; Kriegel Cert. ¶ 8. In addition, Plaintiff asks for an order enjoining Defendant from using the National Sportswear marks in marketing or presenting apparel products to the public or otherwise infringing Plaintiff's trademarks. Pl.'s Letter Br. at 2-3; Compl. at 9-10.

Plaintiff filed its complaint on February 20, 2014, ECF No. 1, and Defendant was served on March 5, 2014, ECF No. 5-3. Defendant failed to answer or otherwise respond to the complaint, and Plaintiff requested entry of default on April 10, 2014, ECF No. 5, which the Clerk entered the

3

**NOT FOR PUBLICATION**

following day on April 11, 2014, ECF No. 6. Plaintiff moved for default judgment on June 27, 2014. ECF No. 7.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because the entry of default prevents claims from being decided on the merits, courts do "not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-cv-1581(PGS), 2007 WL 1674485, at *4 (D.N.J. June 8, 2007). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made

without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

> When the complaint seeks injunctive relief, the plaintiff must show
>
> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). A permanent injunction is appropriate in the context of a default judgment where these requirements are met. *E.A. Sweep Co., Inc. v. Deli Exp. of Tenafly, LLC*, No. 2:13-6337 (KM), 2014 WL 1911878, at *12 (D.N.J. May 13, 2014); *see S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (in default judgment case, court makes independent determination of damages and there is "no reason why a similar requirement should not be applicable to the granting of an injunction").

## DISCUSSION

### I. Plaintiff Has Adequately Supported its Causes of Action

The Court must first determine whether Plaintiff's unchallenged facts adequately support its causes of action. The Court finds that Plaintiff has satisfied its burden with respect to all five counts.

#### A. Federal Trademark Infringement and Unfair Competition

Plaintiff's first two causes of action are brought under the Lanham Act for federal trademark infringement under 15 U.S.C. § 1114 and federal unfair competition under 15 U.S.C. § 1125(a). Courts measure these claims "by identical standards." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). "To prove either form of Lanham

5

Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id.* (citation omitted).

"[T]he first two requirements . . . are proven where . . . a mark was federally registered and has become 'incontestable' under the Lanham Act," which occurs "after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 & n.2 (3d Cir. 1994). "A likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *A & H Sportswear*, 237 F.3d at 211 (citation and quotation marks omitted).

In assessing whether a likelihood of confusion exists, the Third Circuit has "held that courts need rarely look beyond the mark itself in cases involving competing goods." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (citation and quotation marks omitted). But the Circuit has "adopted a nonexhaustive list of factors to consider in evaluating likelihood of confusion, commonly referred to as the '*Lapp* factors.'" *Id.*; *see Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983). And considering these factors "can be quite useful for determining likelihood of confusion even when the goods compete directly." *A & H Sportswear*, 237 F.3d at 212 (citation and quotation marks omitted).[2] Still, a District Court is not required to use the factors:

---

[2] When the goods compete, the factors are:

    (1) the degree of similarity between the owner's mark and the alleged infringing mark;
    (2) the strength of the owner's mark;

**NOT FOR PUBLICATION**

"If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A & H Sportswear*, 237 F.3d at 214. And even when the Court does turn to the *Lapp* factors, "the court often need not apply each and every factor; when goods are directly competing, both precedent and common sense counsel that the similarity of the marks takes on great prominence." *Id.*

Here Plaintiff's marks are federally registered and have become incontestable, Benedict Aff. ¶ 3 Ex. A, meaning that the first two requirements of these causes of action are satisfied. The Court also finds that there is a clear likelihood of confusion between Plaintiff's marks and those of Defendant. Defendant, like Plaintiff, is in the business of making custom sportswear apparel. *See* Benedict Aff. ¶ 9 Ex. C. The goods directly compete and the Court finds that this is a case where it need not look beyond the marks themselves to make its finding. Plaintiff has submitted internet search results and web pages showing Defendant listing its business as "National Sportswear." *Id.* The Court finds this is identical to Plaintiff's marks, and there is a clear likelihood

---

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
(5) the intent of the defendant in adopting the mark;
(6) the evidence of actual confusion;
(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
(8) the extent to which the targets of the parties' sales efforts are the same;
(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos*, 369 F.3d at 709 (citation omitted).

of confusion between them. Plaintiff has met its burden of establishing its Lanham Act causes of action.

### B. Common Law Trademark Infringement and Unfair Competition

The test for "relief under New Jersey common law for infringement and unfair competition . . . is identical to the test for federal unfair competition and infringement; whether a likelihood of confusion exists." *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988); *see also Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) ("[I]n the Third Circuit the test for common law infringement and unfair competition is identical to the test for federal infringement and unfair competition."). "There is a good reason for this: the Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994). It follows that Plaintiff has adequately supported its causes of action for common law unfair competition and common law trademark infringement. *See* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:1.50 (4th ed. 1994) ("Most courts, in analyzing a claim of infringement based on both federal and state law, will apply to both a single analysis of the likelihood of confusion issue.").

### C. Tortious Interference with Prospective Economic Advantage

"An action for tortious interference with a prospective business relation protects the right to pursue one's business, calling or occupation free from undue influence or molestation." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750 (1989) (citation and quotation marks omitted). "A complaint based on tortious interference must allege facts that show some protectable right—a prospective economic or contractual relationship." *Id.* at 751. The complaint

**NOT FOR PUBLICATION**

must contain "allegations of fact giving rise to some reasonable expectation of economic advantage." *Id.* (citation and quotation marks omitted). This cause of action also requires "that the interference was done intentionally and with 'malice,'" which in this context means "that the harm was inflicted intentionally and without justification or excuse." *Id.* (citation omitted). In addition, the complaint must adequately allege causation—that "if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits"—and damages. *Id.* at 751-52 (citation and quotation marks omitted).

Plaintiff's complaint and submissions adequately make out its claim for tortious interference with prospective economic advantage. Plaintiff alleges that Defendant uses "techniques in the creation, production and marketing of [its] website . . . to manipulate Internet searches for 'National Sportswear' to direct traffic to Defendant's website." Compl. ¶ 18. Plaintiff also alleges a specific instance when its customer—Lithos Robotics—intended to order from Plaintiff but instead erroneously attempted to order with Defendant. *Id.* ¶ 22. And during the order process, Plaintiff alleges that Defendant purported to be National Sportswear to secure the customer's business. *Id.* Plaintiff alleges that this has happened in other instances as well and that it has caused and will continue to cause Plaintiff damages. *Id.* ¶¶ 19-21, 23, 50-53. As these allegations are treated as conceded by Defendant, Plaintiff has satisfied all four elements of the cause of action. Plaintiff had prospective economic opportunities with potential customers on the internet, Defendant intentionally and without justification interfered with those opportunities by manipulating internet searches and purporting to be Plaintiff to secure business. This caused Plaintiff to lose economic benefits and resulted in damages.

**NOT FOR PUBLICATION**

## II. Default Judgment is Appropriate

Turning to the *Chamberlain* factors, the Court finds that default judgment is appropriate. Plaintiff will be prejudiced if default is denied because it will continue to either lose customers or have its customers be confused by the presence of Defendant's infringing mark in Internet search results and on the web. The Court cannot glean any litigable defense Defendant may have, especially given that Plaintiff's marks are incontestable and that Defendant's mark is essentially identical to them. Finally, the Court cannot determine whether Defendant's delay is due to culpable conduct, but the Court notes that Defendant did not respond to Plaintiff's 2011 cease and desist letter and has also failed to respond after being served in this litigation, raising the possibility of a pattern of ignoring Plaintiff's attempts to vindicate its rights. Default judgment is appropriate in this case.

## III. Remedies

Plaintiff requests several remedies: statutory damages under 15 U.S.C. § 1117(c), attorneys' fees, costs, and injunctive relief. Pl.'s Letter Br. at 3.

### A. Statutory Damages

Plaintiff contends that "it is not possible . . . to quantify, with specificity, the exact amount of damages suffered," and so asks the Court to award statutory damages of $1,000 under section 1117(c). That section provides that "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages . . . not less than $1,000 . . . ." 15 U.S.C. § 1117(c). The Court finds that Plaintiff has complied with this section and is entitled to statutory damages of $1,000.

**NOT FOR PUBLICATION**

### B. Attorneys' Fees and Costs

Plaintiff asks the Court to award it attorneys' fees of $2,525 under 15 U.S.C. § 1117(b), arguing that it is entitled to such fees because Defendant "had full intent and knowledge" of its use of Plaintiff's marks. Pl.'s Letter Br. at 3. But that subsection is inapplicable. Subsection 1117(b) deals with treble damages in certain cases, but only when damages have been found under subsection 1117(a). *See* 15 U.S.C 1117(b) ("In assessing damages under subsection (a) . . . ."). Plaintiff has elected to receive statutory damages under subsection (c), which does not provide for attorneys' fees. The apparently automatic right to attorneys' fees under subsection (b) does not come into play here.

Nonetheless, the Court concludes that subsection (a)'s separate instruction that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" is satisfied here. 15 U.S.C. § 1117(a). The Third Circuit has instructed "that a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'" *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991). Here there can be no question that Defendant engaged in willful, knowing infringement, as Plaintiff's cease and desist letter clearly advised Defendant of its marks in 2011. *See* Benedict Aff. ¶ 7 Ex. B. The Court grants Plaintiff's request for attorneys' fees, and concludes the fee of $2,525 is reasonable upon review of Mr. Kriegel's invoice. *See* Kriegel Cert. ¶ 8 Ex. B.

Plaintiff also requests its costs in the amount of $459.95. Pl.'s Letter Br. at 3; Kriegel Cert. ¶ 8 Ex. B. The Court finds Plaintiff is entitled to these costs under Federal Rule of Civil Procedure 54(d)(1).

**NOT FOR PUBLICATION**

### C. Injunctive Relief

Plaintiff's main desire is to secure injunctive relief. The Court finds Plaintiff is entitled to the injunction it seeks. Plaintiff has demonstrated that it will continue to suffer irreparable harm because "trademark infringement amounts to irreparable injury as a matter of law." *Kos*, 369 F.3d at 726 (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) (quotation marks omitted)). Monetary damages are inadequate because Plaintiff cannot determine the number of customers it is losing—or the goodwill loss it has and will continue to suffer—as a result of Defendant's infringement, unfair competition, and tortious interference. *See* Benedict Aff. ¶ 11.

The Court also finds that the balance of hardships is in favor of Plaintiff, as an injunction simply allows Plaintiff the protection it is entitled to without harming Defendant in any way except to prevent it from its illegal activities. And the public interest would not be disserved by an injunction. To the contrary, the public is served by the removal of a likelihood of confusion between these two competitors.

The Court will grant the requested injunction, prohibiting Defendant from using Plaintiff's marks in connection with the sale or decoration of apparel, from falsely representing itself as National Sportswear or being connected with it, from engaging in any act which will cause the public to believe it is associated with National Sportswear, and from otherwise unfairly competing with Plaintiff. *See eBay*, 547 U.S. at 391.

**NOT FOR PUBLICATION**

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against Defendant for $3,984.95 for statutory damages, attorneys' fees, and costs. The Court also grants Plaintiff a permanent injunction against Defendant. An appropriate order follows.


Date: August 6, 2014

**/s/ William H. Walls**
United States Senior District Judge
